### THE BAINBRIDGE.

(Circuit Court of Appeals, Ninth Circuit. January 5, 1914. Rehearing Denied March 10, 1914.)

#### No. 2,196.

MARITIME LIENS (§ 65*)—EQUIPMENT OF VESSEL—WASHINGTON STATUTE.

Under Rem. & Bal. Code Wash. § 1182, which makes all vessels liable for all work done or materials furnished for their construction, repair, or equipment at the request of their owners, where one furnished prior to June 23, 1910, a valuable engine for the equipment of a motor boat on request of the owner, but slight evidence should be required to establish the fact that it was furnished on the credit of the vessel.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. § 103; Dec. Dig. § 65.*

Maritime liens for supplies and services, presumption as to credit to vessel, see note to The George Dumois, 15 C. C. A. 679.]

In Admiralty. Suit by T. J. King and A. Winge, copartners doing business as King & Winge, against the gas boat Bainbridge (the Inland Navigation Company, claimant), for repairs prior to June 23, 1910, in which the Astoria Iron Works intervened. From a decree denying it a lien, intervener appeals. Reversed.

C. C. Dalton and Herbert W. Meyers, both of Seattle, Wash., for appellant.

Ira Bronson and J. S. Robinson, both of Seattle, Wash., for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge. The appellant was an intervener in a suit in which the firm of King & Winge had libeled the gas boat Bainbridge for balance due for work done and material furnished in repairing the vessel at her home port in Seattle, Wash. The court below held that the libelant had a lien on the vessel for the balance due, basing that conclusion upon the owner's remark to the libelant:

"You need not be afraid about the money. The boat is good for the work."

The intervener, at the request of the owners, furnished gas engines and other fixtures, which were installed in the boat, of the reasonable value of $3,550, and other material and labor, of the value of .$189, on which $1,000 was paid, leaving a balance due of $2,739. The court below found that no agreement had been made between the intervener and the owners under the terms of which the engines, fixtures, and labor were to be furnished or performed upon the faith and credit of the vessel, and held that under the rule established by this court in Alaska & P. S. S. Co. v. C. W. Chamberlain & Co., 116 Fed. 600, 54 C. C. A. 56, the appellant was not entitled to a lien. A decree was entered dismissing the intervening libel, and from that decree the present appeal is taken.

In the case so referred to, and relied upon by the court below, a lien was claimed for supplies furnished a vessel at her home port at the instance of her charterer. There was no evidence even tending to show that the supplies were furnished on the faith and credit of the vessel. The evidence, so far as it went, was to the contrary. The bills which were made out and presented for the supplies were made against the charterer, and the failure of the libelant to produce its books on the trial was taken as indicating that the supplies had not been charged against the vessel. In the present case the facts are materially different. The intervening libel is brought to enforce a lien for machinery and repairs which went into the vessel and enhanced her value. The only testimony on the subject of the understanding between the parties is that of the president of the appellant, who testified as follows:

"Q. State whether or not, in the furnishing of the material that you have testified, and the work performed on the vessel in placing the engine equipment in the vessel, whether or not you depended upon the credit of the vessel for payment? A. Any time we furnished anything for any vessel, we always hold the vessel; that is, we bill to the vessel, and hold the vessel for the repairs. Q. Well, at the time that you agreed to furnish the machinery and perform these services as you testified to, did you have any understanding of any kind with the Sound Motor Company as to holding the vessel for the payment of the amount in case it was not paid? A. No; I did not have any understanding to hold the vessel; it was not mentioned. I did not mention it; but it was understood that we were to hold the engine until the final payment was made, but there was nothing said about holding the vessel, as I remember."

We think there is enough in this testimony and the circumstances to show that the work was done, and the material was furnished, upon the faith and credit of the vessel. There was an understanding that the appellant was to hold the engine until the final payment was made. The engine, representing almost the entire outlay of the appellant, having gone into the vessel, there was no way by which the appellant could hold the engine, otherwise than by holding the vessel. The owner must have understood that the vessel was liable for the material and machinery so furnished, for at the time, while this work was being done, King & Winge, who were making other repairs, were told by the owner:

"The boat is good for the work."

The statute of Washington (section 1182) makes all vessels, their tackle, apparel, and furniture, liable for work done or material furnished in that state for construction, repair, or equipment at the request of their owners, or persons having charge of their construction, alteration, repair, or equipment. In view of the terms of the lien law, and the fact that in the present case the appellant furnished valuable machinery, which became part and parcel of the vessel, slight evidence should be required to establish the fact that the work was done and the material furnished on the faith and credit of the vessel, especially where, as here, there is entire absence of evidence to indicate a contrary intention.

The decree is reversed, and the cause remanded for further proceedings.